Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1689 | **DATE** | 9/27/2004 |
| **CASE TITLE** | TJELLE-MONFERDINI vs. CATERPILLAR, INC. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]   Defendant Caterpillar, Inc.'s motion for summary judgment [10-1] is granted.
     Judgment is entered for defendant Caterpillar, Inc. and against plaintiff Susan Tjelle-Monferdini. ENTER
     MEMORANDUM OPINION AND ORDER.

     *Suzanne B. Conlon*

(11)  ■  [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 8 2004 | 21 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 9/27/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CB | courtroom deputy's initials | | PW mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUSAN TJELLE-MONFERDINI,           )
                                   )
                Plaintiff,         )      No. 04 C 1689
                                   )
        v.                         )      Suzanne B. Conlon, Judge
                                   )
CATERPILLAR, INC.,                 )
                                   )
                Defendant.         )

## MEMORANDUM OPINION AND ORDER

Susan Tjelle-Monferdini ("Tjelle") sues Caterpillar, Inc. for retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Tjelle claims she was terminated by Caterpillar in retaliation for requesting overtime pay. Caterpillar denies it engaged in retaliation and contends Tjelle was terminated for over-reporting her overtime. Caterpillar moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

All facts are undisputed unless otherwise noted. Caterpillar manufactures and ships parts for excavators and trucks. In 1994, Tjelle began working for Caterpillar at its Joliet, Illinois facility as an industrial apprentice. She was a valued employee and received several promotions. From 1999 to her termination in February 2004, Tjelle worked as a logistics planning analyst. Rollin Dilworth served as Tjelle's direct supervisor from August 2003 until one week before her termination. Oren Miller became her supervisor during her last week of employment as part of a departmental reorganization.

1

Tjelle was paid every other week; as a salaried non-exempt employee she was entitled to overtime pay at a rate of time-and-a-half her regular pay rate. In 2003 and 2004, Caterpillar encouraged employees in Tjelle's department to work overtime. Caterpillar paid overtime to employees if more than eight hours were worked in a weekday or if any hours were worked on the weekend. Employees were required to submit their overtime electronically via the electronic document routing ("EDR") computer system. When employees reported overtime using the EDR system, the overtime pay was automatically included in paychecks. If overtime was not entered into the EDR system correctly or on time, employees were required to complete a paper memo called a "blue card" to submit requests for overtime pay. Unlike the EDR system, blue cards required manual processing by payroll clerks. Therefore, the EDR system was the preferred method for Caterpillar employees to record their overtime. Tjelle was responsible for reporting her own overtime.

Tjelle worked on Saturday, December 27, 2003. This was the only day she worked during the December 21-28, 2003 workweek. Tjelle contends she worked 6.8 hours that day, but the EDR system was not operating. On January 2, 2004, she requested a blue card from Dilworth in order to report her overtime hours from the previous Saturday. Dilworth approved the completed blue card and submitted it to the payroll department. When Tjelle received her January 16, 2004 paycheck, she discovered she was not paid overtime for the 6.8 hours worked on December 27th. She informed Dilworth and he assured her he would look into it. When the overtime was not included in her January 30th paycheck, Tjelle again spoke to Dilworth and told him her overtime had been "messed up" since November. She explained she had not received overtime pay in the same workweek when she worked the overtime hours. Rather, she usually received overtime pay in the following pay period. Tjelle always received her overtime compensation, but believed timing of the payments was

2

erroneous.  Dilworth again told her he would look into the absence of the December 27th overtime pay.

Dilworth spoke to Monica O'Brien in Caterpillar's payroll department to ensure Tjelle was paid for her overtime.  O'Brien was responsible for processing salaried employees' blue cards. Tjelle also spoke to O'Brien about her overtime pay.  O'Brien's review of the payroll records caused her to believe Tjelle had already been paid for the disputed overtime.  Tjelle explained she worked the same number of hours on December 13 and December 27, which may have made it appear that overtime was already paid.  O'Brien processed the blue card and Tjelle received the overtime for December 27th on her February 13th paycheck.

Bill Lawson was O'Brien's direct supervisor and oversaw payroll operations.  Tjelle never raised the overtime issue with Lawson.  O'Brien, however, kept Lawson apprised of the issue and Lawson decided to review Tjelle's overtime himself.  Lawson attests he wanted to ensure Tjelle was paid for all hours worked and to avoid any further misunderstandings.  Further, he sought confirmation that Tjelle had not been paid twice, as O'Brien originally suspected.  Caterpillar Ex. E, ¶ 15.  Tjelle asserts Lawson's inquiry was unnecessary because the issue was resolved when O'Brien issued her overtime payment.  Tjelle Resp. to Caterpillar Facts at ¶¶ 76-80.  In any event, Lawson examined Tjelle's payroll records and discovered she had submitted what he believed to be an unusually high number of blue cards.  Caterpillar Ex. E, ¶ 17.  Lawson found the records and blue cards were confusing, so he obtained Tjelle's gate swipe data from Caterpillar security.[1]  *Id.* at ¶ 18.

---

[1]Upon entering work, Tjelle typically slid her employee badge through a slot that caused a security turnstile to unlock or, if she did not have her badge, she would punch in her badge number and answer personal identifying questions on a time clock.  The gate swipes were automatically electronically recorded.

Lawson thought the gate swipe data recorded the exact time an employee entered or left the facility; he intended to use the gate swipe information to ensure Tjelle's hours and pay balanced.[2] *Id.* at ¶¶ 19-20.  Upon comparing the gate swipes to Tjelle's claimed overtime, however, it appeared Tjelle claimed overtime for hours not worked.  Lawson showed his findings to Dan Kaye, a logistics manager who told him to further review and compile the data.  Lawson reviewed additional gate swipes and prepared a spreadsheet representing Tjelle's swipe-in times, swipe-out times, overtime claimed, and overtime to which she was actually entitled.  Pay periods that Lawson believed showed Tjelle over-reported overtime appeared in red.  Tjelle denies she over-reported her overtime and contends many of the spreadsheet calculations were inaccurate.  Tjelle Ex. D at ¶¶ 1, 10.  She does not know how Larson calculated the figures or whether the alleged mistakes were intentional.  Tjelle Resp. to Caterpillar Facts at ¶ 137.

Lawson also spoke to Dilworth about Tjelle's overuse of blue cards and her failure to enter time through the EDR system.  Dilworth testified at his deposition:

> [Lawson's] words to me were that it was the salaried employee's responsibility to make sure they turned in their overtime on EDR, on that system, in the allotted time. And by showing me those blue cards - or while showing me those blue cards, he said that this is totally unacceptable, it requires too many man hours for my people to be working with these cards so she needs to be turning her time in on the EDR because that's part of her job responsibility.

Caterpillar Ex. D at 10.  Lawson requested that Dilworth counsel Tjelle about using too many blue cards instead of electronically reporting her overtime because he felt, as payroll supervisor, blue cards required additional employee work hours in the payroll department.  Tjelle responds that

---

[2] There was not, however, an official time clock at the security gates.  Tjelle contends she would occasionally enter the plant to swipe in and different times would be displayed on each of six gates.

Dilworth merely told her "I'm just going to warn you that Bill Lawson is going to turn you in to Jim Waters and you're going to get reprimanded if you turn in any more blue cards . . . just be careful." Caterpillar Ex. A at 99. When Tjelle asked whether she would receive overtime if she did not turn in a blue card, Dilworth told her to make sure she entered the time into the EDR system because that was the accepted mode of submitting overtime; blue cards were only to be used as an exception.

On February 24th, Kaye provided Miller, Tjelle's new supervisor, with a copy of Lawson's spreadsheet. Kaye told Miller the data reflected repetitive over-claiming of overtime. Miller assumed the spreadsheet was accurate; he did not know how the spreadsheet was compiled nor did he check its accuracy. After discussing the spreadsheet's disparities between claimed and earned overtime with Larson, Miller spoke to human resources personnel. Over-claiming overtime is considered "stealing time." Human resources confirmed Caterpillar had a zero tolerance policy on stealing time and that Caterpillar had terminated other salaried non-exempt employees for the same conduct. Miller decided to terminate Tjelle's employment. On February 27th, Miller and a member of the human resources department met with Tjelle. Miller asked Tjelle to explain why Caterpillar had paid her for overtime she had not actually worked; Tjelle replied she did not know what he was talking about. Miller informed her Caterpillar had a zero tolerance policy for stealing time and terminated her employment. Miller did not show Tjelle the spreadsheet he relied upon in deciding to terminate her, despite her request for documentation of the alleged over-reporting. Tjelle was not told she was terminated for complaining about overtime.

When Tjelle complained to Dilworth and O'Brien about not receiving the December 27th overtime pay, and when she complained to Dilworth that her overtime pay had not been timely paid since November, she concluded Caterpillar's failure to pay was in violation of federal overtime wage

5

laws. Tjelle argues her termination was retaliatory because she repeatedly complained about her December 27th overtime, was fired for overtime, and "Bill Lawson didn't like it and decided, oh, let's get rid of her. I don't know. This is all my assumption. I have no idea what happened." Caterpillar Ex. A at 122-123. Tjelle does not know of any other salaried non-exempt employees who complained to Caterpillar supervisors or payroll about overtime. Nor does she know of any employee who was accused of over-reporting overtime. Tjelle has identified three purportedly comparable employees who "did not complain about overtime, in fact worked overtime for which they were [sic] not paid and were not discharged for their silence." Tjelle Resp. to Caterpillar Facts at ¶ 146.

## DISCUSSION

### I.   Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

6

## II.    Retaliation

The FLSA prohibits employers from discharging or otherwise discriminating against employees for filing a complaint or instituting, or causing to be instituted, a proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3).  Tjelle may prove a FLSA retaliation claim either directly or indirectly. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 786 (7th Cir. 2004); *Cichon v. Exelon Generation Co.*, No. 02 C 3441, 2003 U.S. Dist. LEXIS 16459, at *11-12 (N.D. Ill. Sept. 18, 2003) (FLSA retaliation claim analyzed under same framework as Title VII retaliation claim).  To survive summary judgment using the direct method, Tjelle must present "direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that [s]he engaged in protected activity . . . and as a result suffered the adverse employment action of which [s]he complains." *Stone v. City of Indianapolis Public Utils. Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002).  If she succeeds in this showing, Caterpillar may prevail if it "presents unrebutted evidence that [it] would have taken the adverse employment action against [Tjelle] even if [it] had no retaliatory motive." *Id.*

Alternatively, Tjelle may prove the retaliation claim indirectly by demonstrating: (1) she engaged in statutorily protected activity; (2) she performed her job according to Caterpillar's legitimate expectations; (3) despite her satisfactory performance she suffered an adverse action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.*; *Davis*, 368 F.3d at 788.  If Tjelle establishes these elements, Caterpillar must present a legitimate, non-invidious reason for the adverse action and the burden shifts back to Tjelle to show the proffered reason is pretextual. *Id.*

7

## A.    Direct Method

Tjelle fails to provide evidence to sustain her retaliation claim under the direct method. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) ("direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus."). "Inferences and circumstantial evidence cannot be used to establish a prima facie case for retaliation under the direct evidence test." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004).

Tjelle has not asserted, nor is there any evidence to suggest, Caterpillar has admitted her termination was retaliatory.  In fact, Tjelle agrees Miller did not tell her she was terminated for complaining about overtime.  Instead, Tjelle asserts Lawson did not like her repeated complaints about overtime so he unnecessarily reviewed her overtime requests and erroneously compared her hours worked and submitted overtime.  Then, Lawson provided the information to Kaye, who provided it to Miller; Miller decided to terminate her.  Tjelle argues Lawson's unlawful motive may be imputed to Miller.  This theory does not constitute direct evidence that Tjelle's termination was retaliatory.  Notably, Tjelle does not submit Lawson's deposition testimony.  According to Caterpillar, she did not depose Lawson during discovery. Caterpillar Reply at 11.  The only evidence Tjelle offers to support her characterization of Lawson's motives is: (1) Dilworth's testimony that Lawson told him the number of Tjelle's blue cards was unacceptable; and (2) Dilworth's warning she would be reprimanded for turning in more blue cards.  Tjelle argues, particularly because blue cards' only purpose is to request overtime payment, these facts "give rise to the *inference* that Lawson was angry either that Tjelle was requesting payment for her December 27th overtime hours, or that she so frequently submitted requests for the overtime hours she worked." Tjelle Mem. at 7 (emphasis added).  The court must reject this argument because direct evidence cannot be established

8

on inference alone, particularly when the inference does not directly point to a retaliatory motive. Because she does not present direct evidence of discrimination, Tjelle cannot establish retaliation under the direct method.

## B.    Indirect Method

There is no dispute Tjelle's termination constituted an adverse employment action. Caterpillar argues Tjelle cannot establish: (1) she engaged in protected activity; (2) she met Caterpillar's legitimate performance expectations; or (3) she was treated less favorably than similarly situated employees outside her protected class.  Further, Caterpillar contends she cannot show its actions were pretextual.

### 1.    Protected Activity

To qualify as protected activity, Tjelle's actions must be under or related to the FLSA and she must have a good faith belief the FLSA might be violated. *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999).  Tjelle asserts she engaged in protected activity by submitting her requests for overtime pay, by complaining to O'Brien and Dilworth about not receiving December 27th overtime pay, and by complaining to Dilworth that the timing of her overtime pay had been "messed up" since November.  Caterpillar argues none of these actions constitute the specific formal activity required by the FLSA, 29 U.S.C. § 215(a)(3).  Further, Caterpillar argues Tjelle did not have a good faith belief it was violating the FLSA because she was paid a full week's salary and 6.8 hours of overtime for working only one day in a workweek; thus, she was paid more than required by statute. Caterpillar concludes, Tjelle could not have reasonably believed Caterpillar violated anything other than its own liberal policies.

The anti-retaliation provision of the FLSA provides:

> it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee *because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.*

29 U.S.C. § 215(a)(3) (emphasis added).   Caterpillar contends only the specific formal activity described, not informal complaints to a supervisor and a payroll clerk, constitute protected activity under the FLSA.  As Caterpillar recognizes in its motion, however, informal complaints to internal management constitute protected FLSA conduct. *See e.g. Wittenberg v. Wheels, Inc.*, 963 F. Supp. 654, 658-60 (N.D. Ill. 1997).  Therefore, Tjelle's complaints regarding her overtime pay may be protected if she had a good faith belief Caterpillar was violating the FLSA.

Tjelle correctly asserts there is no requirement that an actual FLSA violation occur for her conduct to be protected if she thought federal wage laws were being violated. *Sapperstein*, 188 F.3d at 857.  Tjelle did not need to know there was an actual FLSA violation before complaining, as long as she believed in good faith there was a violation. *Id.*  It is undisputed Tjelle believed Caterpillar was in violation of federal overtime wage laws.  However, Caterpillar counters that even a good faith belief must be objectively reasonable, citing *Hamner v. St. Vincent Hosp. & Health Ctr., Inc.*, 224 F.3d 701 (7th Cir. 2000) (an employee's subjective belief that he engaged in protected activity by complaining about sexual orientation harassment was not objectively reasonable because sexual orientation harassment is not prohibited by Title VII). *Hamner* holds it is not objectively reasonable to oppose conduct that is not proscribed by statute.  Here, the alleged misconduct, failure to pay earned overtime, is proscribed by the FLSA.  Although there was no actual violation, Tjelle complained of conduct that could violate the FLSA.  Drawing reasonable inferences in Tjelle's favor, she satisfies the first element of a *prima facie* case.

10

### 2.    Legitimate Performance Expectations

Caterpillar argues Tjelle cannot establish she met its legitimate performance expectations when terminated because she over-reported her overtime, failed to electronically report her overtime and arrived late to work. In response, Tjelle: (1) denies over-reporting overtime; (2) asserts she was counseled for submitting too many blue cards, not failing to report overtime electronically; and (3) argues Caterpillar has not shown any policy making a salaried employee's late arrival to work an infraction. Additionally, Tjelle asserts she had a very positive performance review on January 15, 2004, which did not mention any of these issues.

Tjelle must demonstrate she met Caterpillar's legitimate employment expectations at the time of her termination. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328 (7th Cir. 2002). The key inquiry is whether she satisfied Caterpillar's legitimate expectations regarding the reporting of overtime. Viewing all facts and reasonable inferences in her favor, Tjelle has not met this burden. The only evidence she submits to demonstrate she met performance expectations is her January 2004 evaluation. This evaluation was completed before any of the events at issue occurred and before overtime over-reporting was known. In contrast, Caterpillar provides evidence to establish it believed Tjelle over-reported overtime and that it terminated her on that basis. Tjelle does not rebut that evidence with anything but her own testimony she met performance expectations; she also challenges the accuracy of the spreadsheet calculations. Tjelle's testimony, without more, is insufficient to create a genuine issue of material fact as to whether she met Caterpillar's legitimate business expectations, particularly when faced with Caterpillar's evidence to the contrary. *Mills v. First Fed. Savings and Loan Assoc.*, 83 F.3d 833, 843-44 (7th Cir. 1996). Tjelle's perception of her own performance is irrelevant; it is the perception of the decision-maker that matters. *Id.*

### 3. Similarly Situated

To establish two employees are similarly situated, the evidence must show both employees "dealt with the same supervisor, were subject to the same workplace rules, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). At a minimum, Tjelle needs to identify an employee who: (1) did not complain about overtime; (2) over-reported overtime; and (3) was not terminated. Tjelle cannot satisfy this burden. She admits she does not know of any salaried non-exempt employees who complained to Caterpillar supervisors or payroll about overtime. Nor does she know of an employee who was even accused of over-reporting overtime. Instead, Tjelle identifies three alleged comparable employees who "did not complain about overtime, in fact worked overtime for which they were [sic] not paid and were not discharged for their silence." Tjelle Resp. to Caterpillar Facts at ¶ 146. She further contends these employees were not subjected to gate swipe data analysis, even though the same payroll department reviewed their overtime submissions. This is simply insufficient to meet her burden. Tjelle does not allege these employees were charged with misconduct or had the same supervisor. *Radue*, 219 F.3d at 617-18; *Skvarla v. Potter*, No. 04 C 1027, 2004 U.S. App. LEXIS 17160, *4-5 (7th Cir. Aug. 13, 2004) (comparables must engage in the same misconduct to be similarly situated). This failure alone sufficiently precludes a showing of similarity. *Radue*, 219 F.3d at 618. Moreover, assuming Tjelle wants the court to infer Caterpillar knowingly and intentionally did not pay earned overtime to these employees and only allowed them to keep their jobs because they did not complain, the inference is unreasonable and unsupported by any record evidence. In fact, Tjelle does not provide any record evidence, aside from her own assertions, to establish the identified comparables

12

are similarly situated. Tjelle has failed to satisfy her *prima facie* burden of identifying a similarly situated employee who was treated more favorably.

### 4. Pretext

Even if Tjelle established a *prima facie* case of retaliation, a reasonable jury could not find Caterpillar's reason for her termination, over-reporting of overtime, was pretextual. To establish pretext, Tjelle must point to evidence that would tend to prove Caterpillar's reason is factually baseless, not the actual motivation for discharge, or insufficient to motivate discharge. *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003). Tjelle contends a reasonable jury could find Lawson acted with an unlawful *animus* that should be imputed to Miller. To support her argument, Tjelle asserts: (1) Lawson had no reason to investigate her gate swipe data and the spreadsheet was full of errors; (2) Lawson's statement to Dilworth regarding her submission of too many blue-cards reflects unlawful *animus;* and (3) Miller told Dilworth she was terminated for attendance, a reason inconsistent with his statement to her upon termination.

The fact the spreadsheet calculations were wrong, even if true, is not indicative of pretext. It is not enough to show the decision was mistaken or unfair. The court's only concern regarding pretext is whether Caterpillar's explanation was honestly believed. *Id.*; *Giannopoulous v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997). Regarding Lawson's statement to Dilworth, no reasonable jury could infer from the record evidence that Lawson referred to anything other than Tjelle's over-use of blue cards, as opposed to EDR requests. The evidence simply does not support her assertion that Lawson objected to her requests for overtime pay. Even if Miller told Dilworth she was to be terminated for attendance problems, a disputed fact, the statement supports

13

Caterpillar's assertion that it had a non-retaliatory reason for her termination.  No reasonable jury could conclude Caterpillar terminated Tjelle for complaining about overtime.

## CONCLUSION

The material facts are undisputed.  For the foregoing reasons, Caterpillar is entitled to judgment as a matter of law.

September 27, 2004                                      ENTER:


                                                       Suzanne B. Conlon
                                                       United States District Judge

14